UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLEAN WHOLESALE GROCERY COOPERATIVE, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> AGRI STATS, INC., et al., <br><br> Defendants. | 19-cv-08318 <br> 1:21-cv-03551 <br> 1:21-cv-03763 <br><br><br><br> Hon. Virginia M. Kendall <br> Hon. Gabriel A. Fuentes |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION TO COMPEL PRE-CLIENT INVESTIGATIVE MATERIALS**

**Table of Contents**

I. INTRODUCTION ........................................................................................................... 1

II. ON POINT'S INVESTIGATIVE FILE PRE-DATES ANY RELEVANT
ATTORNEY-CLIENT RELATIONSHIP. .................................................................... 2

    A. Hagens' Unsuccessful Solicitation of Unidentified Prospective Clients
Does Not Satisfy Rule 26(b)(3)'s "Party" Requirement. ..................................... 3

    B. The Named Plaintiffs' Retention of the Lockridge Firm for Other Protein
Cases Does Not Shield Hagens' Pre-Retention Investigation. ............................ 5

    C. The Named Plaintiffs' Subsequent Retention of Counsel Does Not Shield
Pre-Retention Documents. ................................................................................... 6

III. RULE 26(B)(3), NOT THE COMMON LAW, GOVERNS MOVANTS'
PRIVILEGE CLAIMS. .................................................................................................. 8

IV. RULE 45'S 100-MILE RULE CANNOT SHIELD ON POINT'S FILES. ................. 10

V. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES[1]

**Page(s)**

**CASES**

*Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*,
    709 F.2d 1109 (7th Cir. 1983) ................................................................................................7

*Castro v. Sanofi*,
    2013 WL 1707094 (N.D. Ill. 2013) ......................................................................................4, 7

*Castro v. Sanofi*,
    2013 WL 3771493 (N.D. Ill. 2013) ...................................................................................2, 4, 9

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) .................................................................................................7

*F.T.C. v. Grolier Inc.*,
    462 U.S. 19 (1983) ................................................................................................................2, 8

*Hickman v. Taylor*,
    329 U.S. 495 (1947) ..................................................................................................................2

*In re Auto. Refinishing Paint Antitrust Litig.*,
    229 F.R.D. 482 (E.D. Pa. 2005) ...............................................................................................9

*In re California Pub. Utilities Comm'n*,
    892 F.2d 778 (9th Cir. 1989) ..............................................................................................4, 10

*In re Grand Jury Proceedings of Browning Arms Co.*,
    528 F.2d 1301 (8th Cir. 1976) .................................................................................................3

*Maracich v. Spears*,
    570 U.S. 48 (2013) ...................................................................................................................3

*Nat'l Jockey Club v. Ganassi*,
    2006 WL 733549 (N.D. Ill. 2006) ...........................................................................................8

*Poluch v. Am. Fan Co.*,
    119 F.R.D. 621 (D. Mass. 1988) .............................................................................................7

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*,
    600 F.3d 612 (7th Cir. 2010) ...................................................................................................7

---

[1] Unless otherwise noted, all emphasis have been added and all internal citations and quotation marks omitted.

*SF Bay Area Rapid Transit Dist. v. Spencer*,
  2006 WL 2734284 (N.D. Cal. 2006) .................................................................................. 10

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ............................................................................................................ 8

*Urban Outfitters, Inc. v. DPIC Companies, Inc.*,
  203 F.R.D. 376 (N.D. Ill. 2001) .......................................................................................... 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(3) ................................................................................................................ 2

Fed. R. Civ. P. 26(b)(3), 1970 Advisory Comm. Notes ............................................................... 8

**I.       INTRODUCTION**

The now *undisputed* timeline establishes that On Point conducted its investigation a month before Hagens was retained by any party. This precludes Movants' work product claim because Rule 26(b)(3) expressly limits its protection to *post-retention* materials.

Movants' Opposition does not upset this state of affairs. They cite no case extending work product privilege to an unretained attorney's pre-suit investigation. And their factual assertion – that Hagens built a website in an *unsuccessful* attempt to solicit a suitable named plaintiff – is a confession that Movants cannot meet the Rule's party requirement, not a basis for protecting their pre-client investigation. Movants fare no better by reiterating their claim that the Named Plaintiffs previously retained a *different* firm – Lockridge – for *different* cases. Movants do not connect the dots between Hagens, who retained On Point, and Lockridge, who did not. Nor do they connect the Named Plaintiffs' retention in other cases to this one. Each missing link precludes finding that On Point acted on the Named Plaintiffs' behalf *at the time* it conducted its investigation.

Lacking facts or law, Movants resort to trivial or misplaced factual distinctions of Defendants' copious cases. Their efforts fall flat. They first say Defendants' principal case, *Castro v. Sanofi*, is inapposite because the investigated witness was biased. But work product does not turn on witness motivation. Plaintiffs' counsel in *Castro*, B&M, conducted the same type of pre-retention investigation as Hagens. Both used a third-party consultant – Navigant there, On Point here – to contact third-party witnesses. In compelling production, *Castro* carefully considered and rejected *all* the same arguments Movants make here. It rejected the notion that B&M's work for other, unnamed clients entitled it to protection; it rejected the argument that the Named Plaintiffs' post-investigation retention of counsel retroactively protects pre-retention materials; and it rejected the assertion that the common law supplants the express "party" limitations of Rule 26(b)(3). Movants do not claim that *Castro* misconstrued or misapplied the law. Nor do they claim that

those rulings, if applied here, are outcome determinative. Instead, they ask this Court to disregard *Castro* because, in their view, B&M's investigation was "unlawful," whereas theirs, they say, comports with Rule 11. But *no one* accused B&M of engaging in unlawful conduct, nor did the court so rule. It simply held that the "weight of authority … *decisively*" holds that materials created by unretained counsel are not entitled to work product protection. *Castro v. Sanofi*, 2013 WL 3771493, at *4 (N.D. Ill. 2013) ("*Castro II*"). That rule applies with equal force here.

Movants next try to avoid Rule 26(b)(3)'s express limitation by pointing to the pre-Rule common law of *Hickman v. Taylor*, 329 U.S. 495 (1947). But as the Supreme Court has said, Rule 26(b)(3), not the common law, governs "*the extent to which trial preparation materials are discoverable in federal courts*." *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983). Movants do not contest that this District follows that mandate, but instead maintain that *other* jurisdictions have not been so faithful. The argument is doubly wrong. The law of this District governs because the subpoenas were issued from this Court, the discovery dispute is pending here, and it is the forum court for the underlying action. Regardless, no case *in this District or elsewhere* protects an unretained attorney's documents in *any* circumstance. This Court should not be the first.

**II.   ON POINT'S INVESTIGATIVE FILE PRE-DATES ANY RELEVANT ATTORNEY-CLIENT RELATIONSHIP.**

Movants concede that "Rule 26(b)(3) applies" and requires them to show that On Point's Investigative File was prepared "by or for [the Named Plaintiffs] or [their] representative[s]." M. Op. 7, 9; Fed. R. Civ. P. 26(b)(3). But they do not contest that "On Point conducted its investigation on Hagens' behalf ***approximately one month before*** the Named Plaintiffs retained … counsel to represent them in this case." D. Br. 1. Instead, they say that Hagens' *pre-retention* investigation is immunized because of Hagens' discussions with *non-parties*, **or** the Named Plaintiffs' retention of *Lockridge* in *other* cases, **or** the Named Plaintiffs' *post-investigation*

2

retention of Hagens. None of these supposed justifications satisfy Rule 26(b)(3)'s "party" requirement.

  **A.**  *Hagens' Unsuccessful Solicitation of Unidentified Prospective Clients Does Not Satisfy Rule 26(b)(3)'s "Party" Requirement.*

Movants first argue that work product privilege turns not on the existence of an attorney-client relationship with a party, but on the attorney's intent in preparing the document. So long as Hagens intended to use On Point's findings in subsequent litigation, they say, such documents were "prepared in anticipation of litigation" and were not "merely … business development activities." M. Op. 4, 6-7. But Movants conflate Rule 26(b)(3)'s "anticipation of litigation" and its "by or for [a] party" requirements. Attorney intent is simply not relevant to the latter. "[I]f there is no attorney-client relationship, there is no work product privilege." *See* In re Grand Jury Proceedings of Browning Arms Co., 528 F.2d 1301, 1304 (8th Cir. 1976). Full stop.

With misplaced focus on intent, Movants submit a supplemental declaration revealing new details about their pre-retention investigation. *See* ECF 282-1. But the declaration says more about what they cannot prove than what they can. The declaration does not say that the Named Plaintiffs retained Hagens prior to On Point's investigation. Instead, it avers that Hagens established, ***on its own***, a "website … for interested persons or entities to contact" it. *Id*. at ¶ 3. But that is just attorney advertising, not entitled to protection. *Cf*. Maracich v. Spears, 570 U.S. 48 (2013). It certainly does not establish that On Point acted by or for a *party* to this case.[2]

---

[2] Movants argue that *Maricich* distinguished between activities in "anticipation of litigation" and client solicitation. M. Op. 5. Not quite. *Maricich* noted that the phrase "anticipation of litigation" was ambiguous and "susceptible to a broad interpretation." 570 U.S. at 59. So it limited the phrase by distinguishing between out-of-scope solicitation of "new clients," which were "business transaction[s]," and in-scope investigations conducted as "trusted agents ***of their clients***." *Id*. at 61. Thus, in interpreting the "anticipation of litigation" requirement, *Maricich* draws the same pre-versus-post-retention distinction as Rule 26(b)(3).

3

Movants come no closer to satisfying their burden by saying that they "discussed the investigation … with potential class representatives" who responded to their Internet solicitation. ECF 282-1 ¶ 3. The question is not whether the *attorney-client privilege* applies to such communications. Defendants do not seek discovery of those communications, and Movants do not assert attorney-client privilege over On Point's Investigative File. As to the asserted *work product* privilege, Movants' proffer fails to establish that any Hagens *client* authorized Hagens to retain On Point. At most, it shows that individuals who ***never*** became clients discussed potential claims with Hagens before Hagens retained On Point on ***its own behalf***.

But even if Movants could establish that Hagens acted on behalf of a *non-party* client, Rule 26(b)(3) offers no protection. Movants' argument is foreclosed by *Castro*. There, B&M argued that the named plaintiff, Dr. Castro, was "not the only client on whose behalf [B&M] was communicating …, nor was [B&M] the only firm involved in conducting the pre-suit investigation." *Castro v. Sanofi,* 2013 WL 1707094, at *1 (N.D. Ill. 2013) ("*Castro I*"). But those unidentified *clients* were not *parties*. And, as the court noted, the "weight of authority … ***decisively*** reflects the view that, in limiting its scope to materials prepared 'by or for another party,' Rule 26(b)(3) means what it says." *Castro II*, 2013 WL 3771493 at *4.

In response, Movants do not say that *Castro* was wrongly decided. In fact, later in their brief, they affirmatively cite the Ninth Circuit's holding to the same effect. M. Op. 9 (noting that in *In re California Pub. Utilities Comm'n,* 892 F.2d 778, 780 (9th Cir. 1989), work product did not apply because the document's author was not "involved in the [present] litigation at all"). Movants nonetheless say this established rule of law should not be followed because of an imaginary factual distinction. Specifically, they say B&M was not conducting an investigation in "anticipation of litigation," but rather was engaged in an "unlawful conspiracy … as a means of

4

limiting price competition." M. Op. 9. But B&M did exactly the same thing as Hagens. It engaged in a pre-retention factual investigation for the purpose of bringing an antitrust consumer class action. No one accused B&M of engaging in "unlawful" behavior, and the court was neither asked to, nor did it, compel production under the crime-fraud doctrine. The court simply applied Rule 26(b)(3). Movants do not deny that, if the Court does the same here, Movants cannot shield On Point's Investigative File based on their solicitation of non-party prospective clients.

### B. *The Named Plaintiffs' Retention of the Lockridge Firm for Other Protein Cases Does Not Shield Hagens' Pre-Retention Investigation.*

Movants next argue that even if *Hagens* cannot claim privilege, Lockridge can. Lockridge, they say, "has represented the very Plaintiffs in this case in other, related protein cases." M. Br. 1. But this representation is irrelevant because it does not establish that On Point was acting on the Named Plaintiffs' behalf when it conducted its investigation.

*First*, On Point was not retained by Lockridge; it was retained by Hagens. As Defendants' Opening Brief explained, this "*fact alone severs any link between the Named Plaintiffs and On Point.*" D. Br. 13. In response, Movants say nothing. They do not claim that Lockridge and Hagens jointly retained On Point. They do not claim that the two firms previously agreed to share the costs of the investigation. And they do not say that each firm informed their respective clients that the other firm would engage in unspecified activities on their behalf without their clients' knowledge or permission. Absent such facts, Movants cannot show that On Point was acting as a "representative" of the Named Plaintiffs, as Rule 26(b)(3) requires.

*Second*, even if Movants could bridge the gap between Lockridge and Hagens, Movants do not deny that the Named Plaintiffs did not retain Lockridge to represent them *in this matter* until *after* On Point completed its investigation. Movants *concede* that no "formal" representation arose until after the investigation was completed. Instead, they attack a straw man, saying no

5

"formal retention agreement" is necessary to create an attorney-client relationship. M. Op. 5-7. But Defendants do not contend that a formal retention agreement is necessary. Defendants simply note that Movants failed to present *any evidence* of an earlier retention. D. Br. 3 n.4. Movants do not cure that deficiency, failing to submit a declaration from any Lockridge attorney or Named Plaintiff. Movants also continue to withhold the retention agreements for the *Pork* and *Broilers* cases, so there is no evidence that those representations extended beyond those proteins.[3]

Despite this lack of evidence, Movants argue that the Court can *impute* an attorney-client relationship to *this case* because all protein cases are more related than "untethered." M. Op. 1-2. This is a false dichotomy. The scope of the attorney-client relationship does not turn on a metaphysical balancing of similarities and differences. It depends on whether the *client* reasonably believed it had retained an attorney to represent it in the matter *sub judice*. Clients often hire different firms to handle "related" cases. Nor is there any presumption that a person who signs up to be a class representative in one case will automatically agree to do the same in every future case. To find an attorney-client relationship in the absence of a "formal retention" – indeed, in the absence of *any* evidence from Named Plaintiffs themselves – there would, at least, need to be evidence that counsel and client *discussed* the matter. Such evidence is wholly absent here, and so this Court cannot find that the Named Plaintiffs retained Lockridge to represent them in this matter prior to On Point's investigation.

### C. The Named Plaintiffs' Subsequent Retention of Counsel Does Not Shield Pre-Retention Documents.

Unable to show *any* relevant client relationship at the time On Point conducted its investigation, Movants next argue that the Named Plaintiffs' *subsequent* retention of Hagens

---

[3] Defendants previously noted that Movants' "unwillingness to provide the applicable engagement letter(s) suggests that …they relate only to pork and chicken." ECF 275-5. Movants do not disabuse the Court of this notion.

retroactively shields the pre-retention materials. But Rule 26(b)(3) does not extend its protection retroactively. Documents that are not privileged *at the time of creation* do not magically become so just because counsel was fortunate enough to *later* find a willing plaintiff to represent.

No case supports the *ex post facto* creation of privilege. To the contrary, courts emphasize that the "lack of any [attorney-client] relationship ***at the time of the investigation*** eliminates the qualified work product privilege" over an investigation file, despite plaintiff counsel's "subsequent" retention. *Poluch v. Am. Fan Co.*, 119 F.R.D. 621, 622 (D. Mass. 1988). In this District, *Castro* again controls. There, the named plaintiff, Dr. Castro, *eventually* retained B&M. But, as the court noted, this fact would only shield documents post-dating the retention; it did not immunize the pre-retention B&M-sponsored investigation. *Castro I*, 2013 WL 1707094, at *2.

Movants do not address these cases. Instead, they incorrectly assert that, "[i]n the cases cited by Defendants, no attorney-client relationship was *ever* formed." M. Op. 8 (emphasis in original).[4] Not true. Movants just ignore the many cases Defendants cited—like *Poluch* and *Castro*—that do involve attorney-client relationships. *See also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863, 866 (D.C. Cir. 1980).[5]

Nor do any of the "in anticipation of litigation" cases Movants cite advance their cause. None involved Rule 26(b)(3)'s "by or for a party" requirement, and each involved investigations by *party-clients or their counsel*, not **unretained** counsel. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983) (privilege did not apply to a document prepared by client's in-house counsel because litigation was not anticipated); *Sandra T.E. v. S. Berwyn Sch.*

---

[4] Movants apparently concede that *unretained* attorneys lack standing if "there was *never* an attorney-client relationship." M. Op. 8 n.3. This is fatal to Movants' standing. Just as a document is either privileged or not at creation, an attorney either has standing at the time of document creation or he never does. A lawyer cannot manufacture standing over its old documents by searching for a new client to represent.

[5] While Movants latch onto three cases where no attorney-client relationship materialized, those cases establish a different proposition, namely, that work product requires an attorney-client relationship.

7

*Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (post-retention documents prepared by law firm hired specifically to conduct the investigation are privileged); *Nat'l Jockey Club v. Ganassi*, 2006 WL 733549, at *1-2 (N.D. Ill. 2006) (document prepared by law firm at plaintiffs' request).

Rather than cite authority for their subsequent-retention argument, Movants resort to policy. Rule 11, they say, requires a pre-suit investigation, so that Rule must implicitly amend Rule 26(b)(3) to protect an unretained attorney's efforts to develop cases for unidentified future plaintiffs. But as Defendants explained, there is no conflict between the "party" requirement of Rule 26(b)(3) and the obligation to conduct a suitable pre-suit investigation. D. Br. 10. Attorneys may have to wait until they have a client if they wish to shroud their efforts in secrecy, but nothing stops them from conducting any privileged investigation they want once they have a party-client. Movants' only response is that cases may not be as attractive to prospective plaintiffs if they are not pre-packaged and ready-to-file. While this may make an attorney's business development efforts more difficult or less successful, it does not bear on the Rule 26(b)(3) requirements.

### III. RULE 26(B)(3), NOT THE COMMON LAW, GOVERNS MOVANTS' PRIVILEGE CLAIMS.

Unable to satisfy Rule 26(b)(3), Movants argue that the rule can be disregarded because On Point's Investigative File is "protected by the work product doctrine even if Rule 26(b)(3) did not apply." M. Op. 9. But as the Supreme Court explains, Rule 26(b)(3) "codifies" the work product doctrine in federal civil litigation, and "*clarif[ies] the extent to which trial preparation materials are discoverable in federal courts*." *Grolier*, 462 U.S. at 25; *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981). The Advisory Committee Notes also reject the *ad hoc* approach Movants advocate, noting that "[s]ufficient experience" with work product issues "has accumulated" to warrant proceeding "by rule" rather than "judicial decision." Fed. R. Civ. P. 26(b)(3), 1970 Advisory Comm. Notes.

Based on this teaching, courts consistently hold Rule 26(b)(3) cannot be circumvented by relying on the common law of *Hickman v. Taylor*. As *Castro* explained,

> "The premise of the plaintiffs' argument [is] that the scope of the work product doctrine is broader than set forth in Rule 26(b)(3). That is simply incorrect.
>
> Unquestionably, the common law work product doctrine may extend beyond areas specifically addressed by the Rule…. But that … does not suggest that, where the Rule explicitly conditions protection on **party status**, that common law may be invoked to extend the scope of the protection … to non-parties.
>
> To so hold would abrogate the limitations affirmatively imposed by the Rule and contravene the Supreme Court's teaching that Rule 26(b)(3) sets forth '*the extent to which trial preparation materials are discoverable in federal courts.*'"

2013 WL 3771493, at *4.

In response, Movants latch on to the fact that *Hickman* still governs intangible discovery and non-civil litigation. M. Op. 10-11. But these caveats do not change the outcome. As Movants' own authority notes, *Hickman* only governs discovery that is "***not embodied in tangible form***." M. Op. 11 n.5 (quoting Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.)). On Point's Investigative File is clearly a tangible document, not an intangible thought that can only be elicited through deposition or trial testimony. But even if *Hickman* governed, as *Castro* noted, *Hickman* does not override Rule 26(b)(3)'s express "party" limitations. 2013 WL 3771493, at *4.

Recognizing that *Castro* undermines Movants' position, they ask the Court to disregard this District's precedent because, in their view, "First and Ninth Circuit law apply." M. Br. 12 n.6. But Movants lack authority for their preferred choice of law. The subpoenas were issued out of this District under Rule 45(a)(2); the parties consented to this court's jurisdiction under Rule 45(f); and – of course – the underlying action is pending here. *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 486 (E.D. Pa. 2005) (transferee court law applies to discovery dispute); *Urban Outfitters, Inc. v. DPIC Companies, Inc.*, 203 F.R.D. 376, 379 (N.D. Ill. 2001) ("Illinois has a significant interest in applying its laws to discovery disputes in its courts.").

9

But regardless of which law applies, the outcome is the same. Neither the First or Ninth Circuits, nor any other court, confers privilege over an *unretained* attorney's documents. Indeed, despite saying that "[c]ourts throughout the First Circuit … have … held" that work product protection applies to non-parties, Movants do not cite *any* such case. *See* M. Op. 11-12. Likewise, the Ninth Circuit case Movants cite expressly ***rejected*** the argument that privilege applies "outside the literal bounds of the rule," noting that the court was "***not free to suspend [Rule 26(b)(3)'s party] requirement***." *CPUC*, 892 F.2d at 781.[6]

## IV. RULE 45'S 100-MILE RULE CANNOT SHIELD ON POINT'S FILES.

With no valid privilege claim, Movants assert that the original On Point subpoena must be quashed under Rule 45(c)(1). But as Defendants explained, the objection is moot because Defendants served new subpoenas to address that objection.[7] Movants do not claim that the new subpoenas are defective. Instead, they say that the initial (supposed) defect is impossible to cure. But courts routinely rule on subpoenas as amended during the meet-and-confer process. Moreover, Movants' objection does not apply to Defendants' Cross-Motion to Compel, which applies to both the original and newly-issued subpoenas.

## V. CONCLUSION

For these reasons, this Court should compel production of On Point's Investigative File.

Dated: August 11, 2021                              Respectfully submitted,

---

[6] Movants point to the observation that the "inapplicability of the work-product protection" does not prevent a court from quashing an "oppressive" subpoena on *non-privilege* grounds. *SF Bay Area Rapid Transit Dist. v. Spencer*, 2006 WL 2734284, at *3 (N.D. Cal. 2006); *CPUC*, 892 F.2d at 781. But Movants do not assert any such grounds.

[7] Movants note that they met and conferred over the 100-mile issue, and wrongly accuse Defendants of "incorrectly" stating otherwise. M. Op. 3. But that meet and confer only occurred on July 7, 2021 (at Defendants' request), ***16 days after*** Movants filed their Motions to Quash, as Defendants previously explained. D. Br. 5 n.6.

/s/ Britt M. Miller
Britt M. Miller
Matthew D. Provance
Robert E. Entwisle
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com
rentwisle@mayerbrown.com

Sybil L. Dunlop
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-8345
sdunlop@greeneespel.com

*Counsel for Cargill, Incorporated and Cargill Meat Solutions Corporation*

/s/ Colin R. Kass
Marc E. Rosenthal
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, IL 60602
(312) 962-3530
Mrosenthal@proskauer.com

Christopher E. Ondeck
Colin R. Kass
Stephen R. Chuk
Rucha A. Desai
Erica Taylor Jones (*pro hac vice forthcoming*)
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004
(202) 416-6800
COndeck@proskauer.com
CKass@proskauer.com
SChuk@proskauer.com
RDesai@proskauer.com
EJones@proskauer.com

*Counsel for Butterball, LLC*

/s/ Michael L. McCluggage
Michael L. McCluggage
Daniel D. Birk
EIMER STAHL LLP
224 South Michigan Ave, Suite 1100
Chicago, IL 60604
(312) 660-7600
Mmcluggage@eimerstahl.com
Dbirk@eimerstahl.com

Joshua Goldberg
CARPENTER, LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2105
Chicago, IL 60601
(312) 777-4825
Goldberg@carpenterlipps.com

Jennifer A.L. Battle
David J. Barthel
Theodore M. Munsell Jill
Rogers Spiker
Joel E. Sechler
CARPENTER, LIPPS & LELAND LLP
280 North High Street
Suite 1300
Columbus, OH 43215
(614) 365-4100
Battle@carpenterlipps.com
Barthel@carpenterlipps.com
Munsell@carpenterlipps.com
Spiker@carpenterlipps.com
Sechler@carpenterlipps.com

*Counsel for Cooper Farms, Inc.*

11

*/s/ Michael K. Sciaccotta*
Michael K. Sciaccotta
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
(312) 876-8000
michael.sciaccotta@dentons.com

Gaspare J. Bono
Leslie A. Barry
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
(202) 496-7500
gap.bono@dentons.com
leslie.barry@dentons.com

*Counsel for Farbest Foods, Inc.*

*/s/ Carmine R. Zarlenga*
Carmine R. Zarlenga
William Stallings
Stephen M. Medlock
Oral Pottinger
MAYER BROWN LLP
1999 K Street NW
Washington DC 20009
(202) 263-3000
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
smedlock@mayerbrown.com
opottinger@mayerbrown.com

*Counsel for Foster Farms, LLC, Foster Poultry Farms*

*/s/ Gregory G. Wrobel*
Gregory G. Wrobel, Bar No. 03122900
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312) 609-7500
gwrobel@vedderprice.com

Henry W. Jones, Jr. (*pro hac vice*)
JORDAN PRICE WALL GRAY JONES
& CARLTON, PLLC
1951 Clark Avenue
Raleigh, North Carolina 27605
Telephone: (919) 828-2501
Facsimile: (919) 834-8447
hjones@jordanprice.com

*Attorneys for Defendant House of Raeford Farms, Inc.*

12

*/s/ Colby Anne Kingsbury*
Colby Anne Kingsbury
FAEGRE BAKER DANIELS LLP
311 South Wacker Drive, #4300
Chicago, IL 60606
(312) 212-6500
Colby.Kingsbury@FaegreBD.com

Richard A. Duncan
Craig S. Coleman
Emily E. Chow
Isaac B. Hall
FAEGRE BAKER DANIELS LLP
90 S. Seventh Street, Ste. 2200
Minneapolis, MN 55402
(612) 766-7000
Richard.Duncan@FaegreBD.com
Craig.Coleman@FaegreBD.com
Emily.Chow@FaegreBD.com
Isaac.Hall@FaegreBD.com

Christopher A. Krueder
FAEGRE BAKER DANIELS LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
(515) 248-9000
Christopher.Krueder@FaegreBD.com

*Counsel for Hormel Foods Corporation and Hormel Foods, LLC*

*/s/ Kirstin B. Ives*
Kirstin B. Ives
FALKENBERG IVES LLP
230 West Monroe Street, Suite 2220
Chicago, IL 60606
(312) 566-4803
kbi@falkenbergives.com

J. Douglas Baldridge
Lisa Jose Fales
Danielle R. Foley
Andrew T. Hernacki
VENABLE LLP
600 Massachusetts Ave., NW
Washington, DC 20004
(202) 344-4000
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
athernacki@venable.com

*Counsel for Perdue Foods LLC and Perdue Farms, Inc.*

*/s/ Jacob D. Koering*
Jacob D. Koering
MILLER, CANFIELD, PADDOCK & STONE, PLC
225 West Washington Avenue, Suite 2600
Chicago, IL 60606
(312) 460-4272
koering@millercanfield.com

William L. Monts III (*pro hac vice pending*)
Justin W. Bernick (*pro hac vice pending*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Agri Stats, Inc.*

14

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on August 11, 2021, a copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

By: /s/ *Colin R. Kass*